UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS.

CIVIL ACTION NO: _____

MELISSA ING
Plaintiff
v.
TUFTS UNIVERSITY
Defendant

COMPLAINT AND DEMAND FOR JURY TRIAL

## I.    Introduction

1.    This is an action by an Associate Professor of Dental Medicine against her

employer, for retaliation for complaining of sexual harassment, and for gender

discrimination, in violation of MGL Chapter 151B, 20 U.S.C. section 1681 ("Title IX"),

and 42 U.S.C. section 2000e. This action is brought by Plaintiff Dr. Melissa Ing, a

female who works as an Associate Professor of Dental Medicine at Tufts School of

Dental Medicine. Only several weeks after meeting Dr. Ing for the first time in

December 2018, and learning that Dr. Ing had reported being sexually harassed by a peer

at Tufts, Dr. Ing's newly arrived department chair stated that she would likely not provide

Dr. Ing with a mandatory endorsement for promotion to full professor. At that time the

department chair had inadequate knowledge of Dr. Ing's qualifications for promotion to

enable her in good faith to state she would likely withhold the mandatory endorsement.

See paragraphs 35-37 below. In October 2019, the department chair stated definitively

that she would not be endorsing Dr. Ing for promotion. See paragraph 64 below. At the

same time, male peers of Dr. Ing who were not as qualified as she was and is, were

promoted to full professor. See paragraphs 28 and 39 below.

**JURISDICTION AND VENUE**

2.      Jurisdiction over this matter lies in this Court pursuant to 28 U.S.C. §1343 (as to the §2000e claims) and pursuant to 28 U.S.C. §1367 (regarding supplemental state claims).

3.      Venue in this District Court is proper because the illegal employment practices complained of herein occurred in Boston, Suffolk County, Massachusetts.  On information and belief, the employment records related to Plaintiff's employment with Defendant are also located within Boston, Suffolk County, Massachusetts.

**III.    Parties**

4.      Plaintiff Dr. Melissa Ing is a resident of Norfolk County, Massachusetts.  She is female.  At all times relevant to this Complaint she was an Associate Professor of Dental Medicine at the Tufts School of Dental Medicine, employed by Defendant at its place of business in Suffolk County, Massachusetts.

5.      Tufts School of Dental Medicine ("Tufts") is a division of Tufts University, with a principal place of business in Massachusetts located in Boston, Suffolk County, Massachusetts. At all times relevant to this Complaint, Tufts was Plaintiff's employer. At all times relevant to this Complaint, Defendant Tufts was an "employer" within the meaning of MGL Chapter 151B§5, and a person within the meaning of MGL Chapter 151B§4.  For the purposes of this complaint, Tufts meets all requirements for coverage under MGL Chapter 151B.  At all times relevant to this Complaint, Tufts was Plaintiff's employer within the meaning of 42 USC §2000e, was engaged in an industry effecting commerce within the meaning of 42 USC §2000e, and in all other respects met all of the requirements for coverage under 42 USC §2000e.  Tufts is a recipient of Federal financial

2

assistance as that term is defined in 20 U.S.C. section 1681, and in all respects met all of the requirements for coverage under 20 U.S. C. section 1681.

6. At all times relevant to this Complaint, Plaintiff performed her job in at least a satisfactory manner.

7. Dr. Ing graduated from Tufts Dental School in 1989. While in dental school she was one of six people chosen as student teaching faculty members. She knew even then that her career would always be in dental education. She is totally dedicated to the profession, and to education. Her CV clearly states this.

8. Dr. Ing has been teaching dentistry since 1992. She has won numerous teaching awards including two Kaiser-Permanente awards for Teaching Excellence from the University of Connecticut School of Dental Medicine, where she continued her teaching career. She has had numerous teaching award nominations from both the University of Connecticut and from Tufts, including the Tufts Teaching with Technology award and Tufts Distinction Awards, and has been inducted into the Tufts Robert Andrews Research Society for promoting research.  Dr. Ing has also been nominated for the National Presidential Award for Excellence in Science, Mathematics and Engineering Mentoring, and the National Science Board's Promotion of Science Award. Dr. Ing recently won the 2020 National Million Women Mentors/STEM Connector Trailblazer Community Service Award.

9. Dr. Ing won the National Award for Teaching Excellence given by the American Dental Education Association and Colgate Palmolive in 2015.  She has lectured locally,

3

nationally, and internationally; many of her abstracts, manuscripts, a book chapter, online articles, an international webinar, and international podcasts have been published. Dr. Ing designed and edited more than 28 educational videos which faculty and students made use of. She is a recognized authority both nationally and internationally in her areas of expertise. Dr. Ing has been in leadership roles within Tufts, with statewide projects, and in national leadership roles.

10. Dr. Ing started working for Tufts in June 2011. While at Tufts, she had to endure inappropriate and embarrassing comments and gestures from a colleague, Dr. Roland Vanaria. Dr. Vanaria is approximately 16 years older than Dr. Ing. The inappropriate conduct related to Dr. Vanaria increased in early 2017.

11. In late January 2017, Dr. Ing's direct supervisor, Dr. Peter Arsenault, informed her that Dr. Vanaria wanted to ask her out. Dr. Ing told Dr. Arsenault that she was not interested. In early February, Dr. Vanaria did indeed ask out Dr. Ing, to which she politely declined.

12. In early March 2017, Dr. Vanaria entered Dr. Ing's office uninvited, and propositioned her, asking her to "have monkey business" with him. She was nervous, felt trapped by herself in the office, and she finally got him to leave. For many months after that, Dr. Vanaria would wait in the conference room connected to Dr. Ing's office for her to finish her clinic duties in the evening. Essentially, Dr. Vanaria was "stalking" Dr. Ing, even after Dr. Ing complained to Dr. Arsenault and asked if Dr. Vanaria could be moved and not allowed to use the office space/adjoining conference area.

4

13. Among other inappropriate behaviors, Dr. Vanaria would regularly leer at Dr. Ing and stare at her legs and chest, would state things to her such as "come on, lift up your lab coat," he would comment on how he liked her "boots and nylons," and he would slap his thigh and say "come on Hon, why don't you sit on my lap?" This behavior occurred numerous times. Dr. Vanaria also continued his stalking behavior after evening clinic.

14. Dr. Ing complained to her supervisor, Dr. Arsenault multiple times about this sexually harassing behavior. She asked multiple times if Dr. Vanaria could be moved from her office premises and also if his swipe card privileges could be removed. She did her best to avoid Dr. Vanaria.

15. In June 2017, Dr. Ing emailed Dr. Arsenault and asked him to please fix this problem with Dr. Vanaria once and for all. The next day Dr. Arsenault told Dr. Ing "I wish that you did not put this in writing because I now need to report this."

16. In mid-June 2017, the Tufts OEO office commenced a severely flawed investigation of these matters. Dr. Ing fully disclosed the facts of the sexual harassment.

17. Throughout the "investigation," Dr. Ing's concerns were minimized, she was essentially blamed for complaining of Dr. Vanaria's conduct, and Dr. Ing was made to feel that she had done something wrong by her complaint.

18. By September 2017 Dr. Vanaria had not been removed from the premises, and was still stalking Dr. Ing in her office area. To this day, Dr. Ing is not aware of the extent if at all, that Dr. Vanaria was disciplined for his inappropriate conduct.

19. The conduct of Dr. Vanaria toward Dr. Ing as set forth above constitutes the establishment of a sexually harassing environment.

20. Dr. Ing explained multiple times to OEO that she was worried about retaliation and asked that Dr. Vanaria be moved quietly to a second floor office (a different floor), to save both of them any embarrassment. Dr. Vanaria had his own office on the second floor so it made sense that he would be moved to his own floor. Dr. Ing complained for months about Dr. Vanaria. Instead of resolution, bullying of Dr. Ing by friends of Dr. Vanaria ensued. The bullying and erroneous gossiping continued and became worse when Dr. Vanaria was dismissed from the school in July 2018, for reasons having nothing to do with Dr. Ing's situation.

21. On November 15, 2017 the Tufts OEO "investigator" yelled at Dr. Ing on the phone, and accused Dr. Ing of bringing up her complaint only because of "Harvey Weinstein and the MeToo movement." The investigator also accused Dr. Ing of only bringing up her complaint because she had found out that another female faculty member had left the school after reporting her problems with Dr. Vanaria, and receiving no help.

22. Dr. Ing disclosed problems with other faculty members and female students to the investigator at the initial appointment. Dr. Ing was frightened, intimidated, and received zero advocacy from OEO. OEO told Dr. Ing that she did not understand what sexual harassment is.

23. Dr. Ing did not understand why OEO was being hostile, and repeatedly asking what Dr. Ing would do if she "ran into Dr. Vanaria," asking "Where would Dr. Vanaria eat his

lunch," and "What if Dr. Vanaria wants to visit Peter (Arsenault)," when school administrators had contacted Dr. Ing the beginning of November and agreed to remove Dr. Vanaria from her immediate area.

24. Beginning fall of 2017, then several times again in 2018, and up to 2020 Dr. Arsenault told Dr. Ing that he no longer wanted her to attend the CODE (Consortium of Operative Dental Educators) Region V meetings which are held each autumn in New York City. Dr. Ing has been the Tufts representative since 2012, and had been selected due to her "hard work for the school." Dr. Ing had become Secretary and Co-Chair for the national CODE Region V.

25. Dr. Ing did not understand Dr. Arsenault's statements as CODE is a cariology, dental materials and operative dentistry meeting, and she was in charge of directing and teaching cariology and dental materials courses for Tufts. The person Dr. Arsenault wanted to send, Dr. Stephany Cordero, was not. In addition, Dr. Ing held an officer position in CODE and was a national leader. Furthermore, Dr. Ing gives a CODE presentation each year. Dr. Arsenault told Dr. Ing in 2018 that he "did not see your name on the agenda" and said that he did not believe her statement that she was on the agenda. Dr. Ing had to retrieve and forward to Dr. Arsenault an email exchange from the CODE Chairman, noting her presentation on Silver Diamine Fluoride.

26. During 2018, Dr. Ing became aware that she was being treated unfairly with regard to promotions, although she did not know the reason for the unfair treatment. Dr. Ing was applying for the rank of Full Professor, for which she was and is fully qualified. She exceeded the requirements for having a "primary Area of Excellence in Teaching"

7

and a "secondary Area of Excellence in Educational Leadership," and a mandatory "third Area of Excellence in Community Service and Citizenship." Dr. Ing was given a glowing and extremely positive letter of endorsement by her Chairman at the time, Dr. Charles Rankin.

27. As Dr. Ing's immediate supervisor, Dr. Arsenault conducted her annual evaluations. At the 2018 review date he once again threatened to remove Dr. Ing from CODE and replace her with Dr. Cordero. Dr. Arsenault said he did not believe the number of extracurricular hours worked that Dr. Ing listed on her report. Dr. Arsenault was so hostile that day that Dr. Ing burst into tears and left the review meeting bewildered.

28. Dr. Ing was denied promotion in 2018 but Dr. Ing did not receive any notification of the denial by email or regular mail or verbally. Dr. Ing emailed Monika Bankowski several times and was finally told that a meeting was to be set up with Dr. Carol Ann Trotman, head of the Promotions Committee. On September 19, 2018 Dr. Trotman told Dr. Ing that she "was unsuccessful." Dr. Ing asked for specific written reasons from the committee for the denial of promotion, but no reasons were given. All Dr. Trotman said was that Dr. Ing was "not a Course Director," even though Dr. Ing had been called a Course Director for her Introduction to Operative Clinical Dental Materials Course since 2013. Dr. Ing's immediate supervisor, Dr. Arsenault, and others, regularly and consistently referred to Dr. Ing as a Course Director. More than six men were promoted to full professor.

29. Dr. Trotman told Dr. Ing that she was not a course director because she did not have

8

a hand out, quiz, exam, or student course evaluation. Dr. Ing responded that her course had all of those things and in fact, she had included paper copies of all of those within her dossier binder. In fact, Tufts used all of Dr. Ing's educational videos, her syllabi and her handouts, in order to have her dental materials course satisfy accreditation requirements.

30. Dr. Trotman said that Dr. Ing's chair, Dr. Charles Rankin perhaps did not give her a positive endorsement letter. Dr. Ing was confused why Dr. Trotman was questioning Dr. Rankin's letter as she would have viewed the letter as part of Dr. Ing's submission package. As part of the promotion process candidates must receive a positive endorsement letter from their chairman. Dr. Ing met with Dr. Rankin after meeting with Dr. Trotman, and Dr. Rankin confirmed that his 3.5 page positive letter indicated that "Dr. Ing is a dynamo".

31. Dr. Ing met with Dean Huw Thomas on September 20, 2018 and told him that she had not received any notification. Dean Thomas asked her was the meeting with Dr. Trotman "not good enough?" Dr. Ing said that it would be professional to receive a letter so Dean Thomas, not the committee, wrote her a denial of promotion letter after their meeting. Dean Thomas decided to add a few more reasons of his own to the reasons of denial but still nothing came from the Promotions Committee.

32. Dr. Ing was told by Dean Thomas that if she wanted to contest the denial, to visit the Provost's Office in Medford. Dr. Ing made an appointment to see Interim Provost Deborah Kochevar and Vice Provost Kevin Dunn. After listening to Dr. Ing, Provost Kochevar said regarding the promotions process at Tufts Dental "that it is very possible that they may have made some errors since the process is new and if we made a mistake

we will fix it for you." The meeting went well until Dr. Ing said that she also needed to explain about the sexual harassment situation that had occurred with her at the dental school. After that, the meeting ended abruptly. Dr. Ing waited for a response from the Provost's office and tried contacting Provost Kochevar, but was told that it would be best if Dean Thomas took over the promotions process.

33. Dr. Ing was denied promotion in 2018, and she was denied even the opportunity to apply for promotion in two more promotion cycles after that in 2019, with the second denial of opportunity to apply for promotion being as recently as November 2019. Any appeal of these denials would have been completely futile. All of these denials were adverse employment actions.

34. The criteria for promotion which were supposedly being given most emphasis in considering Dr. Ing's application, were consistently being changed by Tufts Dental School faculty, and specifically by her newly arrived Department Chair, Dr. Andrea Zandona, in the middle of her request to reapply for promotion. Tufts also refused to allow Dr. Ing to submit Dr. Rankin's positive letter of endorsement and said that she could only have the newly arrived Dr. Zandona endorse her.

35. In late October 2018 Dr. Ing had brain surgery. She returned to Tufts in mid-December 2018 after her recuperation. A few days after her return to Tufts in December 2018, Dr. Ing had an introductory meeting with her new Department Chair, Dr. Zandona. In the course of that meeting Dr. Ing told Dr. Zandona that she had been sexually harassed by a faculty member named Roland Vanaria, that she had reported the sexual harassment, but that the matter had not been resolved. As she was telling this to Dr.

Zandona, Dr. Ing became emotional. Once Dr. Ing became emotional, Dr. Zandona attempted to comfort her by taking her hand, saying she felt sorry for her, and related her own experiences with sexual harassment in the workplace. Dr. Ing also told Dr. Zandona about having been bullied by the friends of her harasser.

36. Only approximately three weeks after revealing that she had been subjected to sexual harassment at Tufts and had reported the harassment, in early January 2019 Dr. Ing was called into a meeting with Dr. Zandona, Dr. Trotman, Dean Huw Thomas and Human Resources Representative Monika Bonkowski. At this meeting, Dr. Zandona said to Dr. Ing "I am most likely not going to promote you."

37. Dr. Ing did not know with any certainty until October 2019 that she would not be able to be promoted in the November 2019 promotion cycle, when Dr. Zandona told her that she would not be giving Dr. Ing her (Dr. Zandona's) required endorsement.

38. At the January 2019 meeting which Dr.Ing was asked to attend, Dr. Ing asked once again for a letter from the Promotions Committee setting forth the reasons for denial. Dean Thomas, Dr. Trotman, Dr. Zandona, and Monika Bankowski asked for Dr. Ing's dossier back so that they could review it and give her reasons for denial. Dr. Ing told the group that they had her dossier from February until September 2018 which was plenty of time to peruse the book and make reasons for supposed denial. Therefore, she declined to give them back her dossier. Dean Thomas wrote a letter in the middle of January 2019 with newly created, false reasons for denial.

39. Additionally, Dr. Ing was criticized for not having adequate qualifications in certain

of the promotion criteria areas, which were actually areas in which she excelled. There were also specific areas that Dr. Zandona requested Dr. Ing to demonstrate, which Dr. Ing did, even before being requested to do so. Once these were demonstrated, different criteria were added and the previous criteria negated. Dr. Ing's male colleagues were not held to these same criteria, and were promoted. Dr. Ing's qualifications far exceeded those of her six male peers who were promoted to Full Professor in 2018, 2019 as well as 2020.

40. In March 2019 Dr. Ing was advised by faculty that her harasser Dr. Vanaria was going to be coming back to the dental school. Dr. Ing was very alarmed. Dr. Ing got a message from Dr. David Leader, a Practice Co-ordinator on the 2nd floor where Dr. Vanaria was working when he was fired, asking to meet. He requested to meet in private. Dr. Leader told Dr. Ing that some of the administration, specifically Dean Mary Jane Hanlon, told him to stop emailing about the situation and to only use the phone from now on to speak with her about Dr. Vanaria. Dr. Ing went to see Dr. Zandona to ask if it was true Dr. Vanaria was returning as she was nervous about the bullying and retaliation. Dr. Zandona told her that this was a rumor. Then she said "well, I cannot prevent it if Dr. Vanaria's department allows him to return." Dr. Ing left and was very nervous.

41. During 2018-2019 Dean Hanlon was rude to Dr. Ing during Risk Management/Infection Control meetings or on emails when Dr. Ing participated with comments or suggestions, and otherwise. Dr. Ing felt ostracized and intimidated when Dr. Hanlon would publicly pick on her for her suggestions, as well as when Dean Hanlon would use factually incorrect information to criticize Dr. Ing in public email forums, so

eventually Dr. Ing stopped participating and remained quiet.

42. During a March 2019 meeting Dr. Ing was told by Dr. Zandona to hold off any talk of promotions until July 2019. Dr. Zandona told Dr. Ing to leave her promotion dossier book with her and said that she would be too busy to help her with the promotion dossier until July. During the same March 2019 meeting Dr. Zandona asked Dr. Ing how many times a week she was attending sexual harassment therapy. Dr. Ing was caught off guard with this personal and very private health question. Dr. Zandona told Dr. Ing that she "needed to go more often."

43. When Dr. Ing met with Dr. Zandona in July 2019, Dr. Zandona asked why Dr. Ing was meeting with her Dr. Ing was informed that the guidelines for promotion had changed on July 1, 2019. Dr. Zandona told Dr. Ing that she and all other candidates for full professor now needed to be "international." Dr. Ing responded that she already was "international."

44. Dr. Ing found out that between March and June 30, 2019 Dr. Zandona had endorsed Dr. Richard Harold from their department for promotion, and that he was promoted to full professor even though he was not international at the time of his application and at the time of his promotion. Dr. Peter Arsenault who was promoted in 2018, also was not "international" in 2019. To date, neither men are "international."

45. Dr. Ing was falsely told that she did not have certain qualifications, when she absolutely did have them.

46. Over the summer of 2019 Dr. Ing asked Dr. Zandona if they could have monthly "check in" meetings about Dr. Ing's accomplishments and progress towards promotion. Dr. Ing asked if it would be satisfactory for Dr. Ing to email Dr. Zandona with updates if they could not meet. Dr. Zandona agreed to this. After a progress email from Dr. Ing in September, Dr. Zandona replied to Dr. Ing on September 21, 2019 that she was "just tired reading about everything that you have done."

47. The objectives Dr. Ing was told she would need to accomplish being promoted, were constantly being changed and made more onerous. What became extremely clear through this "shell game," was that no matter how qualified Dr. Ing was, and no matter how favorably she rated when compared to her male and female peers, she would never be promoted.

48. The extent to which Dr. Ing was ostracized and her concerns and input in the Department ignored or minimized, is evidenced by the treatment of an incident in late August 2019 during which Dr. Ing was sprayed with contaminated water. Specifically, on August 20, 2019, Dr. Ing was working with a student in the Dental Clinic. To assist the student with the procedure, Dr. Ing sat down to use a slow speed handpiece on the patient, and water shot out of the connection portion of the instrument. This was due to some defect in the equipment or an equipment connection. The water forcefully hit Dr. Ing directly in her right eye, despite Dr. Ing having full eye protection, side shields, and a mask. The water was extremely forceful, it sprayed all over Dr. Ing's eye and face. Water does not normally come out of the slow speed handpiece or out of the connection area.

49. Dr. Ing needed to flush her eye out with water but remembered from the prior July 2019 Committee meeting that the water in the sinks and water lines had high bacterial count contaminated water. She ran to the Poland Spring water dispenser but it was empty. She tried to locate some distilled water bottles but the staff had been instructed by administration to lock them up because distilled water was deemed to be "expensive." She finally found a staff member to give her some distilled water to flush her eye a bit.

50. Dr. Kanchan Ganda, the resident physician for Tufts Dental, instructed Dr. Ing to immediately go to Tufts Medical Center Emergency Room, which she proceeded to do. In the Emergency Room, Dr. Ing was given an aggressive physical examination including anesthesia, profuse eye flushing, a retinal exam, and a corneal exam. Dr. Ing was very worried and upset due to the potential bacterial exposure as well as high acid dye to her eye. The Emergency Room personnel told her to follow up with an ophthalmologist afterwards, which she did.

51. Dr. Ing promptly wrote a detailed memorandum complaining about this incident to Dental School Dean Nadeem Karimbux, Dr. Kanchan Ganda, Paula Callahan (lead dental assistant), and Dr. Mary Jane Hanlon, the Associate Dean of Clinical Affairs and Chair of the Risk Management and Infection Control Committee.

52. Regarding this incident, it must be understood that for more than 18 months prior to the exposure suffered by Dr. Ing, Dean Mary Jane Hanlon (Chair of the Risk Management and Infection Control Committee and current President of the Massachusetts Dental Society) knew that the water lines in the school and the sink water,

had a very high, unacceptable level of bacteria. Dean Hanlon did not disclose the problem to the Risk Management Committee until July 2019. Dean Hanlon told the Committee in July that Tufts was unable to resolve the problem with the exceedingly high level of bacteria in the water lines, yet the clinics continued treating hundreds of patients on all floors. High bacteria in water lines can cause Legionnaires Disease, Mycobacterium abscessus infections, and other possible dire health issues.

53. Dean Hanlon told the Risk Management Committee in July 2019 that the while the acceptable level of bacteria that can be within the water lines is at 500 colony forming units per milliliter of water, (500 CFU/ml), that at the time of the meeting, the level at Tufts Dental Clinics was somewhere around 12,000 CFU/ml. Dean Hanlon told the committee members that she knew that there had been water contamination issues for more than 18 months at the dental school, yet she did not disclose any of this to the committee prior to July 2019. During the meeting Tufts dental lines contamination data about this issue was handed out but quickly taken back, and no members were allowed to keep the data. At the meeting and afterwards, committee members were instructed to keep this matter confidential.

54. During the Risk Management meeting in July 2019 a quick decision was made by the members, to use distilled water as an interim/temporary measure until the issue could be resolved, or until the distilled water ran out, and to add more Citricil acidic dye to counteract the bacteria. Dean Hanlon was worried about distilled water being "too expensive." This was not an acceptable way to deal with this problem, and it is unknown if it has ever been resolved. Dental aerosols safety cannot be overlooked especially

during the COVID-19 pandemic.

55. Members of the Risk Management Committee have specifically been instructed not
to discuss these contamination issues with anyone, during and since the July 2019
meeting. Despite Dr. Ing having been exposed to this potentially dangerous
contamination, and despite Dr. Ing's complaints about this issue, no adequate steps were
taken to address her concerns or to remediate these problems. Dr. Ing's concerns were
ignored.

56. At the end of August 2019 Dr. Ing received an email from Dr. Zandona requesting
Dr. Ing to design and deliver several cariology and new fluoride courses for November
2019. Dr. Ing said that she would be happy to do so but would need some time out of the
clinic and asked that Dr. Zandona please consider making her a course director, since that
was the question of contention for her promotion in 2018. Dr. Zandona said she could
not give Dr. Ing (who was full time) the requested time out of clinic to work on the new
fluoride courses, even though part-time preclinical faculty such as Drs. Falzone, Silvestri,
Singh, Eisen, Gonzalez, and Talmo received protected time to work on their courses. Dr.
Ing explained that she was often working at Tufts until after 10 p.m., and worked on her
days off and weekends, so it would be helpful to her to have time out of clinic in order to
get a new, exciting and comprehensive course designed and delivered.

57. Dr. Zandona informed Dr. Ing on August 27, 2019 that she did not need to be a
course director for promotion. Dr. Ing was confused. Dr. Zandona said that she could
not make Dr. Ing course director since this was a brand new course, and that she instead
wanted to make two new faculty members entering Tufts, course directors.

Dr. Zandona said that Dr. Ing could still get promoted not being a course director, contrary to what Dr. Ing had been told in 2018 by Dr. Trotman. At the same meeting Dr. Zandona said that she had been given "bad advice" by Dr. Rankin, and she reviewed Dr. Ing's second chosen "Area of Excellence." Dr. Ing explained that Dr. Trotman approved the Educational Leadership category, not Dr. Rankin.

58. Also on August 27, 2019, Dr. Zandona looked at another category, Clinical Instruction, Innovation and Expertise, but decided that Dr. Ing did not qualify for that Area of Excellence. This was a surprise to Dr. Ing as she taught her entire Dental Materials course using high technology, and she had been nominated by her students for Tufts Teaching with Technology Award. Dr. Ing had received stellar annual evaluations for this and other didactic courses.

59. Dr. Ing was selected for the national teaching award due to her innovative, creative, hands-on and unique teaching methods. Dr. Ing is nationally and internationally lauded for several areas of her expertise in celiac disease and dental implications, as well as with the STEM education project "Mini Medical School." In addition, she has expertise in dental infection control and in public health subjects. Since Dr. Zandona was her new chairperson and she wanted Dr. Ing to stick with Educational Leadership, Dr. Ing agreed, especially as Dr. Ing had multiple pieces of evidence to supply to satisfy this category.

60. Dr. Ing was very confused with the many differing advisory opinions from her chairs (Dr. Rankin and Dr. Zandona) and Dr. Trotman as well as differing opinions from the deans, Dr. Thomas and Dr. Karimbux.

61. At the August 27, 2019 meeting Dr. Zandona also asked Dr. Ing to write a narrative that included all of her weaknesses and what she did to overcome them. Dr. Zandona told Dr. Ing to include this in her dossier. Dr. Ing was confused about this. Dr. Rankin never asked Dr. Ing to write about her "weaknesses." When she met with Dean Karimbux in the fall of 2019 he gave her a copy of his narrative prior to his promotion, which was very strong, powerful, and positive. Whenever Dr. Ing met with Dr. Rankin about promotion he always would say "you should have no problem being promoted."

62. During 2019, including the November 2019 promotion cycle, one of the requirements for promotion to full professor (the promotion which Dr. Ing sought) was that one's Department Chair had to provide a letter of endorsement for promotion for the individual seeking promotion. Without the Department Chair's endorsement, no promotion to full professor would occur. In 2018, the person who was then the Department Chair, Dr. Rankin, had endorsed Dr. Ing for promotion to full professor. Dr. Rankin had worked with Dr. Ing since 2011 when she moved to Tufts.

63. During the 2019 promotion cycles, Dr. Zandona had just been named the Department Chairperson, and Dr. Rankin was demoted. Dean Huw Thomas told Dr. Ing that he refused to allow Dr. Rankin's letter to be used for Dr. Ing's promotion again in 2019. Dean Thomas also would not allow Dr. Ing to obtain peer letters from Dr. Karimbux, who was not installed as the new dean, or external letters from other dental deans to resubmit her dossier. That did not make any sense to Dr. Ing since during her 2018 original submission Dr. Trotman told her to obtain at least 5 peer letters from faculty and put them in her dossier.

64. At an October, 2019 meeting, Dr. Zandona stated to Dr. Ing that she would not endorse Dr. Ing for promotion. She told Dr. Ing that she had been "given bad advice from Dr. Rankin" which puzzled Dr. Ing because Dr. Rankin was also Dr. Peter Arsenault's Chair and he was promoted. The reason for Dr. Zandona's refusal to endorse Dr. Ing was retaliation against Dr. Ing for having previously complained of sexual harassment and gender discrimination.

65. With the November promotion cycle coming up and the Chairperson's letter of endorsement due by November 15, 2019, Dr. Zandona called a meeting on November 13, 2019. Dr. Ing did not understand why Dr. Zandona was asking for yet another meeting because she already made it clear in October that she would not be endorsing her for promotion. Dr. Ing asked for the reasons for the meeting. Dr. Zandona told Dr. Ing that they wanted to know if she ever planned on going for promotion. That puzzled Dr. Ing because the deadline for promotion was in 2 days and Dr. Zandona had said that she did not plan on writing Dr. Ing an endorsement letter. Any November 2019 application for promotion by Dr. Ing would have been futile as Dr. Zandona had stated that she would not be providing Dr. Ing with her (Dr. Zandona's) required endorsement letter for promotion. Dr. Ing asked why were they having this meeting when the next cycle would not take place until a year later, in November 2020.

66. Present at the meeting were Dr. Zandona, Dr. Arsenault and Dr. Ing. Dr. Zandona started the meeting by stating that Dr. Ing "needed a lot of improvement," which was a false statement. When Dr. Ing asked Dr. Zandona what she meant, and in the course of

her speaking with Dr. Ing during this meeting, Dr. Zandona said again that she would not be endorsing Dr. Ing for promotion for this promotion cycle. The reason for Dr. Zandona's refusal to endorse Dr. Ing was retaliation against Dr. Ing for having previously complained of sexual harassment and gender discrimination.

67. During this meeting, Dr. Ing said to Dr. Zandona "you're never going to endorse me for promotion, are you?" Dr. Zandona did not answer the question.

Dr. Zandona told Dr. Ing that "Peter has given you a lot of time off to work on courses." Dr. Ing said that was a false statement.

68. During the meeting, Dr. Zandona asked Dr. Arsenault, "Peter, as her direct supervisor, do you think that Melissa should be promoted?" Dr. Arsenault hesitated and fumbled with his answer. A week prior to this meeting Dr. Arsenault asked Dr. Ing if he could help by writing her a positive letter of endorsement for promotion. He had told her that "Dr. Rankin and I stand behind you 100 percent and I know exactly how much work you do." Yet at this meeting with Dr. Zandona he finally said: "Dr. Ing you work very, very hard. But we need to make sure that the dental clinics are supported first." Dr. Ing told Dr. Zandona that she was being very unfair by putting Dr. Arsenault on the spot.

69. After the meeting Dr. Arsenault said to Dr. Ing: "Sorry, Melissa, but I have to be very careful. She is my boss. I feel bad for you. I swear to you that I did not meet with her about this until today. It was very uncomfortable being in there."

70. During the November 13th meeting, even though Dr. Ing's first Area of Excellence, "Teaching," was positive, Dr. Zandona told Dr. Ing that she "would have to start from

ground zero again with the Teaching category." That did not make any sense to Dr. Ing, nor was it fair considering that Dr. Ing had been out of work to have brain surgery in autumn 2018, so she may not have enough positive student evaluations for two of the pre-clinical courses that she was registered to teach in. Due to privacy reasons she did not disclose to her students that she was on medical leave during surgery. Dr. Ing also reminded Dr. Zandona that she had won the National Teaching Award. Dr. Zandona responded "that does not count because it is old." Dr. Ing reminded Dr. Zandona that the award was from 2015, which was not "old," since everything that Dr. Ing had submitted from 2011, was considered within the new cycle for promotion. Dr. Zandona did not say anything when Dr. Ing reminded her of this. In addition, Dr. Ing also reminded Dr. Zandona that she had been nominated for several national awards for 2020. Dr. Zandona said "well those are just nominations." Dr. Ing reminded her that one of the awards was the highest STEM award honor in the nation.

71. During the November meeting Dr. Ing reminded Dr. Zandona that she was principal investigator of nineteen research projects. Dr. Zandona was a participant on one of Dr. Ing's cariology research projects. Dr. Zandona told Dr. Ing that she had "not published any papers on any research." Dr. Ing responded that was no promotion criteria regarding research, but Dr. Ing had done research in order to be well-rounded, which was documented for candidates on the Promotions Guidelines. Dr. Harold had not done any research but was promoted. Dr. Arsenault had done minimal research but was promoted. In any event, Dr. Zandona's statement about Dr. Ing not publishing her research was false, as Dr. Ing had in fact published as well as presented extensively about her research.

72. In addition to being given false reasons for non-promotion, and the requirements for a promotion being continually shifted, several male peers of Dr. Ing who were not as qualified as Dr. Ing, and who did not possess the qualifications which Dr. Ing was told she lacked, were promoted, in 2019 and 2020. Dr. Zandona told Dr. Ing that she needed to write about education, which was not contained in the Guidelines for Promotion. When Dr. Ing told Dr. Zandona that, she pulled out a copy of the guidelines to thumb through it. Dr. Ing told her that she had written several publications on education and then asked if Dr. Arsenault wrote anything on education. Dr. Arsenault did not answer. Then Dr. Ing asked if Dr. Harold wrote anything on education. Dr. Zandona did not answer. Dr. Ing also asked why was she being asked to be "international" (which she had already demonstrated many times over), yet the others had not demonstrated this at the time of application or even now, after the time of their promotions. The Guidelines clearly stated that one had to be international to achieve the rank of full professor.

73. On November 22, 2019 Dr. Vanaria placed a phone call to Dr. Ing in the evening, when she was just opening the door to her home. As a result of her fear over this call, Dr. Ing contacted Brookline police, and then reported the matter to Tufts police. Dr. Vanaria placed another call to Dr. Ing on April 27, 2020, and Brookline police were contacted again.

74. Dr. Ing has been ostracized, and she has been improperly denied promotions and denied the opportunity to apply for promotions. She has been subjected to a hostile work environment due to her gender and due to having complained of sexual harassment.

All of this is retaliation for Dr. Ing's complaints of sexual harassment.

The wrongful failures to promote Dr. Ing or to enable or allow her to apply for promotions when multiple male colleagues were receiving promotions, also constitutes gender discrimination. But for the retaliation and discrimination to which she has been subjected, Dr. Ing would have been promoted in 2018 and 2019.

75. All of these actions by Tufts violate the federal and state laws prohibiting gender discrimination and prohibiting retaliation for complaining of sexual harassment.

76. Tufts is responsible for the discriminatory actions of Dr. Ing's managers and supervisors set forth above. These actions for which Tufts is responsible, constitute illegal discrimination against Dr. Ing on the basis of gender, and illegal retaliation, in violation of M.G.L. c.151B, 20 U.S.C. section 1681, and 42 U.S.C. section 2000e.

77. The actions of Dr. Ing's managers and supervisors toward her as discussed above, for which Tufts is responsible, were knowing, intentional and willful.

78. The actions of Dr. Ing's managers and supervisors toward her as discussed above, for which Tufts is responsible, have caused Dr. Ing to suffer financial harm, physical harm and illness, as well as much emotional pain and suffering. Dr. Ing will continue to suffer these injuries into the future.

79. On June 5, 2020, Plaintiff filed a timely Charge of Discrimination on the basis of gender and retaliation with the Massachusetts Commission Against Discrimination, and the U.S. Equal Employment Opportunity Commission.

80. Plaintiff has requested that her Charge of Discrimination pending at the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission be withdrawn to allow her to file suit in Court. Those requests have been granted. A Right to Sue letter was issued by the Equal Employment Opportunity Commission to Dr. Ing in relation to her claims on October 13, 2020. Plaintiff has therefore exhausted her administrative remedies and has timely invoked the jurisdiction of this Court.

81. The discrimination and retaliation to which Dr. Ing has been subjected has continued even after the filing of her charge of discrimination, through the present date.

## COUNT I:    AGAINST TUFTS FOR DISCRIMINATION ON THE BASIS OF GENDER, IN VIOLATION OF M.G.L. c.151B

82.     Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-81 above.

83. Dr. Ing has been denied promotions and the opportunity to apply for promotions, and has been subjected to a harassing and hostile work environment, due to her gender.

84.     By its actions set forth above, Defendant Tufts has engaged in discrimination against Dr. Ing on the basis of gender, in violation of M.G.L. c.151B. These actions have caused Plaintiff to suffer financial, physical and emotional harm and injuries.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Tufts, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, lost future earning capacity, punitive damages, emotional pain and suffering, physical harm, interest, costs, attorney's fees, promotion to the position of Full Professor, and such other and further relief that this Court deems just and proper.

## COUNT II:   AGAINST TUFTS FOR RETALIATION IN VIOLATION OF
## M.G.L. c.151B

85.     Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-84 above.

86. Dr. Ing has been denied promotions and the opportunity to apply for promotions, she has been ostracized, she has been subjected to less favorable working conditions than her peers, and she has been subjected to a harassing work environment, all constituting adverse actions in employment, for having complained of sexual harassment and discrimination due to gender at work. Dr. Ing reasonably and in good faith believed she had been subjected to sexual harassment and gender discrimination, and she took reasonable steps as a result of being harassed and discriminated against. These adverse actions would not have occurred but for Dr. Ing's complaints of sexual harassment and discrimination.

87.     By its actions set forth above, Defendant Tufts has engaged in retaliation against Dr. Ing in violation of M.G.L. c.151B.  These actions have caused Plaintiff to suffer financial, physical and emotional harm and injuries.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Tufts, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, lost future earning capacity, punitive damages, emotional pain and suffering, physical harm, interest, costs, attorney's fees, promotion to the position of Full Professor, and such other and further relief that this Court deems just and proper.

## COUNT III:  AGAINST TUFTS FOR DISCRIMINATION ON THE BASIS OF
## GENDER, IN VIOLATION OF 42 U.S.C. SECTION 2000e

88.     Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-87 above.

89. Dr. Ing has been denied promotions and the opportunity to apply for promotions, and has been subjected to a harassing and hostile work environment, due to her gender.

90.     By its actions set forth above, Defendant Tufts has engaged in discrimination against Dr. Ing on the basis of gender, in violation of 42 U.S.C. section 2000e.  These actions have caused Plaintiff to suffer financial, physical and emotional harm and injuries.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Tufts, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, lost future earning capacity, emotional pain and suffering, physical harm, interest, costs, attorney's fees, promotion to the position of Full Professor, and such other and further relief that this Court deems just and proper.

## COUNT IV:  AGAINST TUFTS FOR RETALIATION IN VIOLATION OF 42 U.S.C. SECTION 2000e

91.     Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-90 above.

92. Dr. Ing has been denied promotions and the opportunity to apply for promotions, she has been ostracized, she has been subjected to less favorable working conditions than her peers, and she has been subjected to a harassing work environment, all constituting adverse actions in employment, for having complained of sexual harassment and gender discrimination at work. Dr. Ing reasonably and in good faith believed she had been subjected to sexual harassment and gender discrimination, and she took reasonable steps as a result of being harassed and subjected to discrimination.  These adverse actions would not have occurred but for Dr. Ing's complaints of sexual harassment and discrimination.

93.    By its actions set forth above, Defendant Tufts has engaged in retaliation against Dr. Ing in violation of 42 U.S.C. section 2000e.  These actions have caused Plaintiff to suffer financial, physical and emotional harm and injuries.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Tufts, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, lost future earning capacity, emotional pain and suffering, physical harm, interest, costs, attorney's fees, promotion to the position of Full Professor, and such other and further relief that this Court deems just and proper.

## COUNT V:    AGAINST TUFTS FOR DISCRIMINATION ON THE BASIS OF GENDER, IN VIOLATION OF 20 U.S.C. SECTION 1681

94.    Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-93 above.

95.  Tufts had knowledge and notice of the sexual harassment to which Dr. Ing was subjected, and the gender discrimination to which Dr. Ing was subjected, but despite that knowledge exhibited a deliberate indifference to the sexual harassment and gender discrimination.

96.  Dr. Ing has been denied promotions and the opportunity to apply for promotions, and has been subjected to a harassing and hostile work environment, due to her gender.

97.    By its actions set forth above, Defendant Tufts has engaged in discrimination against Dr. Ing on the basis of gender, in violation of 20 U.S.C. section 1681.  These actions have caused Plaintiff to suffer financial, physical and emotional harm and injuries.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Tufts, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, lost future earning capacity, emotional pain and suffering, physical harm, interest, costs, attorney's fees, promotion to the position of Full Professor, and such other and further relief that this Court deems just and proper.

## COUNT VI:  AGAINST TUFTS FOR RETALIATION IN VIOLATION OF 20 U.S.C. SECTION 1681

98.       Plaintiff realleges and incorporates by reference as if fully set forth herein, ¶1-97 above.

99. Dr. Ing has been denied promotions and the opportunity to apply for promotions, she has been ostracized, she has been subjected to less favorable working conditions than her peers, and she has been subjected to a harassing work environment, all constituting adverse actions in employment, for having complained of sexual harassment and gender discrimination at work. Tufts has not taken adequate actions to investigate, prevent, stop or remedy the discrimination and harassment.  Tufts had knowledge and notice of the sexual harassment to which Dr. Ing was subjected, and the gender discrimination to which Dr. Ing was subjected, but despite that knowledge exhibited a deliberate indifference to the sexual harassment and gender discrimination. Dr. Ing reasonably and in good faith believed she had been subjected to sexual harassment and gender discrimination, and she took reasonable steps as a result of being harassed and subjected to discrimination.   These adverse actions would not have occurred but for Dr. Ing's complaints of sexual harassment and discrimination.

100.      By its actions set forth above, Defendant Tufts has engaged in retaliation against Dr. Ing in violation of 20 U.S.C. section 1681.  These actions have caused Plaintiff to suffer financial, physical and emotional harm and injuries.

WHEREFORE, Plaintiff demands that this Court enter Judgment in her favor and against Defendant Tufts, in an amount to be determined by this Court, including monies to compensate her for lost pay, lost benefits, lost future earning capacity, emotional pain and suffering, physical harm, interest, costs, attorney's fees, promotion to the position of Full Professor, and such other and further relief that this Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL COUNTS AND ISSUES SO TRIABLE.

DR. MELISSA ING
By her Attorney,

/s/ Mitchell J. Notis

Mitchell J. Notis, BBO#374360
Law Office of Mitchell J. Notis
32 Kent Street
Brookline, MA 02445
Tel.: 617-566-2700