UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10032-RGS

MELISSA ING

v.

TUFTS UNIVERSITY

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

October 13, 2022

STEARNS, D.J.

Plaintiff Melissa Ing brought this action against the Trustees of Tufts College (Tufts), alleging that the Tufts University School of Dental Medicine (TUSDM) discriminated against her when it denied her a promotion to full professor.   Dr. Ing brings claims of gender discrimination and retaliation under three statutes: Massachusetts General Laws chapter 151B (Counts I and II); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (Counts III and IV); and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq*. (Counts V and VI).   Tufts moves for summary judgment.   For the following reasons, the court will <u>ALLOW</u> the motion.

**BACKGROUND**

**A.    Dr. Ing's 2017 Complaint of Sexual Harassment**

TUDSM hired Dr. Ing as an associate professor of dental medicine in 2011.   In June of 2017, Dr. Ing informed her division head that fellow TUDSM instructor Dr. Roland Vanaria had sexually harassed her, including in multiple instances asking her to lift up her lab coat and in another asking whether she would like to "have monkey business."   Tr. of Dr. Ing (Dkt # 49-12) at 5-6.   Tufts Office of Equal Opportunity (OEO) investigator Alida Bogran-Acosta later found that Dr. Vanaria had asked Dr. Ing on a date, but she accepted his denials of having made other inappropriate remarks. Bogran-Acosta concluded that Dr. Vanaria's conduct was not sufficiently severe and pervasive to violate Tufts's sexual harassment policy.   Tufts adjusted Dr. Vanaria's schedule and limited his swipe card access to ensure that Dr. Ing had no further encounters with him.

**B.    2018 Promotion Cycle**

In November of 2017, Dr. Ing decided to apply for a promotion to a full professorship.   TUDSM's guidelines required an applicant to obtain the endorsement of her faculty chair and to submit a dossier demonstrating her achievement in three Areas of Excellence: the Service, Citizenship, and

Professionalism area and two out of the four additional Areas of (1) Teaching; (2) Educational Leadership; (3) Scholarship, Investigation, and Discovery; and (4) Clinical Instruction, Expertise, and Innovation.   The Faculty, Appointments, Promotions, and Tenure Committee (FAPTC) reviewed an applicant's dossier to determine whether it met each of the three criteria.

In January of 2018, Dr. Ing met with Dr. Charles Rankin, her department chair, and Dr. Carroll Ann Trotman, the Associate Dean for Faculty.   Dr. Trotman typically advised candidates to spend six months to a year compiling their dossiers, and at the January 2018 meeting she similarly advised Dr. Ing.   Dr. Ing selected the Teaching and Educational Leadership Areas of Excellence and obtained an endorsement letter from Dr. Rankin. Dr. Rankin's letter described Dr. Ing as a "dynamo" whose "positive contributions to our school and our profession have been exemplary and unique."   March 20, 2018 Letter (Dkt # 49-2) at 3-4.

Dr. Ing sought help from outside advisors while compiling her dossier. She sent her curriculum vitae to Dr. Maria Blanco, the Associate Dean for Faculty at the Tufts School of Medicine.   She told Dr. Ing that she would likely "need to expand [her] impact a bit more for a professorship," and particularly to publish more scholarship.   Jan. 17, 2018 Email (Dkt # 44-

28) at 5.   Dr. Blanco also counselled Dr. Ing to "not rush it and [to] take the time that you need to better learn about [TUDSM's] expectations."   *Id.* at 4. Dr. Ing also sought the opinion of Dr. Mark Wolff, a professor at New York University College of Dentistry who later became the Dean of the University of Pennsylvania School of Dental Medicine.   He told Dr. Ing that her application "would not pass the Professor process [at] NYU Dental."   Jan. 25, 2018 Email (Dkt # 44-29) at 2.

Dr. Ing submitted her dossier in February of 2018, and the FAPTC reviewed her candidacy that spring.   No member of the FAPTC knew of Dr. Ing's previous complaint of sexual harassment.   While there are no minutes of the FAPTC meetings, the four FAPTC members who were deposed in this litigation testified that her harassment complaint had not been discussed.

FAPTC member Dr. Roger Galburt presented Dr. Ing's dossier at a March 27, 2018, FAPTC meeting.   He opined that Dr. Ing did not satisfy the Educational Leadership Area of Excellence.   Dr. Galburt requested that another FAPTC member present Dr. Ing's dossier at the FAPTC's next meeting after an independent review.   Accordingly, Dr. Robert Amato presented Dr. Ing's dossier at the FAPTC's April 3, 2018, meeting.   He agreed with Dr. Galburt that Dr. Ing should not be promoted because she had

4

fallen short of the Educational Leadership standard.   Drs. Galburt and Amato's contemporaneous notes reflect their disagreement with Dr. Ing's characterization of herself as a "course director," as she had only directed a brief workshop.   Dr. Amato also noted that Dr. Ing had not served in a leadership position at TUDSM, such as a committee chair, and was not involved in any organizations related to the advancement of dental education.   After the conclusion of the second meeting, five FAPTC members voted against Dr. Ing's promotion, one abstained, and one voted to table her application.   Following the vote, Dr. Trotman asked Dr. Amato to review the dossier a second time.

Dr. Ing first learned that she would not be promoted at a September 19, 2018, meeting with Dr. Trotman and TUDSM faculty affairs officer Monika Bankowski, where Dr. Trotman outlined the reasons for the denial. The next day, Dr. Rankin disclosed to Dr. Ing the contents of a letter he had received from the FAPTC explaining why she had not been promoted.   That same day, Dr. Ing met with and received a letter from Dr. Huw Thomas, the Dean of TUDSM, further discussing the denial and indicating his understanding that Dr. Ing would appeal the FAPTC's decision.   Three days later, Dr. Ing wrote a rebuttal letter to Dean Thomas disagreeing with the

FAPTC's decision and explaining why she believed she had satisfied the Educational Leadership Area of Excellence.   She took particular issue with the FAPTC's purported definition of "course director."   On January 9, 2019, Dr. Ing met with Dean Thomas, Dr. Trotman, Ms. Bankowski, and her new department chair, Dr. Andrea Zandona, and requested a more detailed explanation of the reasons why her application had been denied.

A few days later, Dean Thomas sent Dr. Ing another letter discussing her dossier's shortcomings in detail.   Dean Thomas reiterated to Dr. Ing that "you did not meet the criteria in your designated secondary *Area of Excellence*, Educational Leadership."   Jan. 15, 2019 Letter (Dkt # 44-39) at 2.   He added that "[t]he supporting documents provided for [the Educational Leadership] section were somewhat inaccurate and limited in breadth and scope."   *Id.*   He outlined three examples of the deficiencies the FAPTC had identified:

- "There was lack of evidence in the area of Tufts academic and administrative leadership roles – i.e. chair or co-chair of a committee; FAPTC felt there were few if any contributions that would constitute as leadership."   *Id.*
- "Despite organizing a 3-hour workshop, FAPTC deemed there was a deficiency in your lack of course directorship; a one-time 3-hour workshop does not compare to a 3, 6 or 9-month course with multiple faculty reporting to you, course grades, etc."   *Id.*
- "Many of the educational leadership roles described in your dossier are solitary presentations and not part of organizing a

6

large local or national meeting and were targeted towards a very narrow audience."   *Id*. at 3.

Dr. Ing did not appeal the decision.

## C.   2019 Promotion Cycle

When Dr. Zandona replaced Dr. Rankin, she made efforts to meet with each of the faculty in her department.   She first met with Dr. Ing on December 13, 2018.   At this meeting, Dr. Ing informed Dr. Zandona of her 2017 sexual harassment complaint, and also her denial of a promotion during the 2018 cycle.   Dr. Ing next saw Dr. Zandona at the January 9, 2019, meeting.   Dr. Zandona told Dr. Ing that should she reapply, "I most likely am not going to promote you."   Deposition Tr. of Dr. Ing (Dkt # 49-12) at 13 (Ing Tr.).[1]   In an email later that day to Ms. Bankowski, copying the Provost, Dr. Ing wrote, "I was quite shocked today at the meeting where I was told to meet with the new chairperson and was told that she may not write a positive letter in support like Dr. Rankin did."   Jan. 9, 2019 Email (Dkt # 49-8) at 2.

Throughout the spring, summer, and fall of 2019, Dr. Zandona met with Dr. Ing several times and corresponded with her repeatedly explaining

---

[1] Dr. Zandona denies having said this or anything like it, and Dean Thomas, Dr. Trotman, and Ms. Bankowski professed to having no recollection of Dr. Zandona making the remark.

how she could go about improving her dossier.   The first such meeting occurred on March 21, 2019, at which Dr. Zandona asked Dr. Ing how often she was attending sexual harassment therapy.   Dr. Ing replied that she was attending once per week, to which Dr. Zandona responded, "You need to go more often."   Pls. Interrog. Resps. (Dkt # 49-19) at 4.[2]

Drs. Ing and Zandona met again on May 21, 2019.   The next day, Dr. Zandona wrote to Dr. Ing regarding her potential resubmission that "[m]y goal is to be able to support you!" and suggested ways Dr. Ing could improve her dossier.   May 22, 2019 Email (Dkt # 44-43) at 2.   Dr. Ing implemented some of Dr. Zandona's suggestions but not others.   The two met again on October 3, 2019, and Dr. Zandona suggested additional steps Dr. Ing could take to improve her chances with the FAPTC.   The two emailed the next day, with Dr. Ing highlighting her accomplishments and attempting to explain why, despite the FAPTC's 2018 decision, she merited promotion.   Dr. Zandona wrote that "we need to focus on things that are weighted more heavily on the FAPTC committee.   Research projects have [sic] impact as grants and publications, and abstracts are good, but they do not carry the

---

[2] Dr. Zandona denies that this interaction took place.   For purposes of summary judgment, the court resolves this factual dispute in favor of Dr. Ing, the non-moving party.

same weight as a peer reviewed published manuscript."   October 4, 2019 Email (Dkt # 44-44) at 4.   Dr. Zandona also confirmed that "when I feel you have [] met the criteria to be promoted I will write a supportive letter."   *Id.* at 6.   In response to Dr. Ing's statement that "[i]f the committee / administration turns down my promotion this will not bode well for you or for me; and it will send a clear message," Dr. Zandona replied, "I am sure you don't want a[n] unsuccessful submission, so let's work together to make[] sure that your submission will be successful."   *Id.*

Later in October of 2019, Dr. Zandona notified Dr. Ing that she would not endorse her for full a professorship in the 2019 cycle because she felt that Dr. Ing had not sufficiently strengthened her dossier.   The two met to discuss the reasons for Dr. Zandona's decision and discuss a path toward a successful application on November 13, 2019.   On November 18, Dr. Ing wrote Dr. Zandona a letter stating that her "accomplishments superseded the guidelines 2 cycles ago" and that she felt "singled out."   November 18, 2019 Letter (Dkt # 44-45) at 2.   She also complained that Dr. Zandona had not sufficiently supported her as she worked to improve her dossier.   Dr. Ing asked Dr. Zandona to point to deficiencies in her dossier compared to those of other instructors who had recently been promoted.

Dr. Zandona replied in a December 9, 2019 letter.   She wrote to Dr. Ing:

> I want to assure you that as your Chair, I do support you.   My support has been exemplified by the various meetings we have had since I became your chair to review and analyze your 2018 promotion denial and to assist you in identifying areas of improvement toward a successful submission.

December 9, 2019 Letter (Dkt # 44-46) at 2.

Dr. Zandona's letter repeated seven previously discussed suggestions to Dr. Ing's dossier: (1) working with other faculty, rather than completing solo projects on the Calibration Committee which Dr. Ing chaired; (2) considering leadership roles in venues of organized dentistry; (3) identifying leadership opportunities in STEM generally; (4) focusing leadership efforts on a specific area of expertise, rather than several at once; (5) submitting work to peer-reviewed publications; (6) continuing to work on both clinical and didactic teaching; and (7) continuing service efforts.   The letter concluded,

> While it is true that I was not prepared to support your submission for promotion in November 2019 because I did not feel you had demonstrated a significant development compared to your last submission in the area of Educational Leadership, this does not mean that I am against your promotion or that I will not work with you towards a successful submission – as described above, I remain committed to doing so.

*Id.* at 3.

10

Dr. Ing took a medical leave of absence from Tufts beginning in December of 2019. She did not return, and her contract expired in June of 2021.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is genuine where "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021), quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). "Facts are material when they have the 'potential to affect the outcome of the suit under applicable law.'" *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23 (1st Cir. 2017), quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The burden then shifts to the nonmoving party to "adduce specific, provable facts demonstrating that there is a triable issue." *Id.*

###### A.    Discrimination Claims

Dr. Ing brings claims of sex discrimination under Massachusetts General Laws chapter 151B, Title VII, and Title IX.   Because there is no direct evidence of discriminatory intent, the *McDonnell-Douglas* burden-shifting framework governs all three claims.   *See Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) (applying *McDonnell-Douglas* standard to claims under Title VII and chapter 151B); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 896-898 (1st Cir. 1988) (holding Title VII standards apply to Title IX discrimination claims).   A plaintiff establishes a *prima facie* case of sex discrimination by showing that "(1) she is a member of a protected class, (2) she was qualified for an open position for which she applied, (3) she was rejected, and (4) someone possessing similar qualifications filled the position instead."   *Ingram v. Brink's, Inc.*, 414 F.3d 222, 230 (1st Cir. 2005).   If the plaintiff makes that showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.   *See Forsythe v. Wayfair Inc.*, 27 F.4th 67, 82 (1st Cir. 2022).   The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.   *See Theidon v. Harv. Univ.*, 948 F.3d 477, 496 (1st Cir. 2020).

Tufts has produced a raft of credible evidence establishing that Dr. Ing was not qualified for a promotion because she did not meet the criteria for her self-chosen Area of Excellence: Educational Leadership.   Tufts points to the uniform conclusions of the FAPTC members, Dr. Zandona, and Dr. Ing's outside advisors, Dr. Blanco and Dr. Wolff, that she was not qualified for a promotion.   Dr. Ing argues in conclusory terms that there is "no question" that she was qualified, relying primarily on the summary of her qualifications from her Charge of Discrimination.   Opp'n (Dkt # 48) at 8-9, 21.   This summary describes certain teaching accolades and Dr. Ing's role within TUDSM, but does not address the Educational Leadership criteria.   These criteria include the gaps that various decisionmakers identified in Dr. Ing's application, such as her failure to qualify as a course director or to take on leadership roles either at Tufts or in external dental organizations.   *See* TUDSM Faculty Handbook (Dkt # 44-25) at 7.   No reasonable factfinder could, on the evidence produced, conclude that Dr. Ing was qualified for promotion.

Even if Dr. Ing could surmount the qualification hurdle, Tufts would be entitled to summary judgment because of the absence of any showing of pretext.   Tufts   identifies   Dr.   Ing's   lack   of   qualifications   as   a

nondiscriminatory reason for its decision to deny her a promotion.    Dr. Galburt and Dr. Amato each cited Dr. Ing's failure to satisfy the Educational Leadership Area of Excellence as their reason for voting against her promotion, and Dean Thomas and Dr. Zandona offered the same rationale.

Dr. Ing offers no evidence that her gender played a role in TUDSM's decision not to promote her, let alone that its proffered reason for the denial was designed to conceal discriminatory animus.    She points to certain purported irregularities in the FAPTC process as evidence of pretext.    In some cases, an employer's disparate application of policies to support an adverse employment action may establish pretext.    *See Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 84 (1st Cir. 2019).    For example, an employee may demonstrate pretext through evidence that "the adverse action departed from a clearly delineated policy" or "the employer applied such a policy differently to similarly situated employees."    *Id.*

Dr. Ing cites as procedural irregularities: (1) the absence of minutes from the meetings at which the FAPTC discussed her application; (2) Dr. Trotman's request that Dr. Amato review Dr. Ing's dossier a second time after the FAPTC had voted against her promotion; (3) the fact that Dean Thomas's September 20, 2018 denial letter went through five drafts, each

14

with more negative language than the last; and (4) the five-month gap between the FAPTC's vote and TUDSM's notification to her that it had denied her promotion request.   However, "there is no indication that th[ese] perceived procedural irregularit[ies] w[ere] relevant to or had any bearing on" Tufts's decision not to promote Dr. Ing.   *Theidon*, 948 F.3d at 500. The absence of minutes, assuming that there was a policy of taking minutes at FAPTC meetings, represents a "bare showing of administrative error." *Miceli*, 914 F.3d at 84.   It would require speculation to infer that the minutes — in contrast to the testimony and notes of the participants — would have contained evidence of discrimination.[3]   Dr. Ing does not identify a policy that the remaining irregularities deviated from, nor does she show that the FAPTC process was handled differently for other applicants.   Because

---

[3] Dr. Ing has not established that Tufts spoiled the meeting minutes. To prevail on a spoliation claim, a party must "proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim." *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998).   Further, "the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)." *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012).   While there is competing evidence regarding whether the meeting minutes existed in the first place, Dr. Ing has failed to show that Tufts destroyed or failed to preserve them with knowledge of their relevance to her prospective claims.

Dr. Ing has failed to show that she was otherwise qualified for promotion or that Tufts's explanation was a pretext for discrimination, the court will enter summary judgment for Tufts on the discrimination claims.[4]

## B.   Retaliation Claims

"A retaliation claim requires a showing that (1) the plaintiff engaged in protected conduct; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the first and second elements."   *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94 (1st Cir. 2006); *see also Theidon*, 948 F.3d at 505 (applying the same standard to Title IX claim).   The parties only contest the third element of Dr. Ing's *prima facie* case.   Where an employee relies upon a chronological relationship between the protected activity and the adverse employment action to support causation, "the temporal proximity must be very close."

---

[4] To the extent that Dr. Ing asserts a Title IX claim based on the alleged bias of the OEO investigator who examined her sexual harassment complaint against Dr. Varania, that claim is also dismissed.   An employer discharges its duty to investigate a complaint of harassment if it conducts a "reasonable investigation," regardless of whether the findings substantiate the accusations.   *Forsythe*, 27 F.4th at 73.   Here, it is undisputed that Ms. Bogran-Acosta interviewed Dr. Vanaria, Dr. Ing, and Dr. Ing's supervisor before concluding that no harassment had taken place.   Tufts nonetheless accommodated Dr. Ing by changing Dr. Vanaria's schedule and swipe access. Whatever the tone of Ms. Bogran-Acosta's communications with Dr. Ing, Tufts's response to Dr. Ing's sexual harassment complaint was reasonable.

*Murray v. Warren Pumps, LLC*, 821 F.3d 77, 87-88 (1st Cir. 2016).    Under Title VII and chapter 151B, the court as a rule applies a but-for standard of causation, while the standard under Title IX is undecided: some courts apply the but-for standard while others use a "substantial and motivating factor" standard.    *Id.* at 506.    Here, the result is the same under either test, as Dr. Ing has failed to establish that her complaint of sexual harassment led to TUDSM's denial of her application for promotion.

In 2018, the decision whether to promote Dr. Ing to full professor belonged to the FAPTC.    Tufts submits unrefuted evidence that no member of the FAPTC knew of Dr. Ing's 2017 sexual harassment complaint.    Thus, her complaint could not have been a but-for cause of the FAPTC's decision to reject her application.    *See Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013).

In 2019, Dr. Ing did not reapply for promotion because Dr. Zandona declined to provide a letter of endorsement.    Tufts has shown that Dr. Zandona arrived at Tufts more than a year after Dr. Ing initiated her complaint, that Dr. Zandona never knew or met Dr. Vanaria, and that Dr. Zandona worked with Dr. Ing for at least six months to improve her dossier.

Dr. Ing relies on her testimony that Dr. Zandona told her at the January

17

9, 2019, meeting that "I most likely am not going to promote you," Ing Tr. at 13, and that Dr. Zandona commented that she should attend sexual harassment therapy more often in March of 2019.   Dr. Ing's recollection of the former remark is undercut by her contemporaneous email stating that Dr. Zandona had told her that she "may not write a positive letter in support like Dr. Rankin did."   Jan. 9, 2019 Email at 2.   Moreover, neither comment establishes that Dr. Zandona associated Dr. Ing's sexual harassment complaint with her resubmission, and both comments occurred long before Dr. Zandona declined to endorse Dr. Ing's promotion.   Dr. Zandona continued advising Dr. Ing for six months after the second comment (and ten months after she learned of Dr. Ing's complaint), and her advice repeatedly consisted of ways to address the weaknesses that the FAPTC identified in Dr. Ing's dossier.   The court will therefore enter summary judgment for Tufts on Dr. Ing's retaliation claims.

## ORDER

For the foregoing reasons, Tufts's motion for summary judgment is ALLOWED.   The Clerk will enter judgment for Tufts and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

18